IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELISE JACKSON, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 05-CV-1480 |
| ALLSTATE INSURANCE CO., | : | |
| Defendant. | : | |

**Anita B. Brody, J.**                                                                                           **July 12, 2006**

## EXPLANATION AND ORDER

Plaintiff Elise Jackson ("Jackson") brings this action against her insurer, Defendant Allstate Insurance Company ("Allstate") for breach of contract and bad faith failure to pay an insurance claim. As required by the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Cons. Stat. Ann. § 1701 et seq., Defendant produces a waiver of coverage with what appears to be Jackson's signature. Plaintiff maintains that the waiver is invalid because the signature on the form is a "forgery and/or . . . otherwise invalid." (2d Compl. ¶ 15.) Before me is Defendant's motion for summary judgment. Because Plaintiff has not met her evidentiary burden on her assertion of forgery, Defendant's motion is granted.

## I. JURISDICTION

Plaintiff Jackson is a citizen of Pennsylvania. Defendant Allstate is an insurance company incorporated under the laws of Illinois with its principal place of business in Illinois. Plaintiff is seeking a judgment in excess of $75,000 including punitive damages and statutory attorney's fees. Therefore, this court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## II. FACTUAL BACKGROUND

On March 5, 2002, Jackson was involved in an automobile accident. Because the responsible party's insurance was insufficient to fully compensate Jackson for the damages she sustained, Jackson submitted an underinsured motorist ("UIM") claim to her own insurer, Allstate, to cover the balance of her costs. Allstate denied the claim, stating that "[t]here is no underinsured motorist coverage on the policy" because Jackson signed a waiver of UIM coverage. (2d Compl. ¶ 10.)

In support of its refusal to pay, Allstate produced a "Rejection of Underinsured Motorist Coverage" form (Def.'s Ex. A at ALL0008).[1] On the signature line is a set of markings that, while difficult to read, Defendant presents as Jackson's signature. Also, Allstate's handwriting expert compares the markings with other valid signatures and opines that "the questioned 'Elise Jackson' signature is pictorially similar to the known signature of Elise Jackson" (Def.'s Ex. T). Plaintiff does not contest this, but instead insists that it is not clear *who* wrote the name "Elise Jackson." (Pl.'s Resp. Mot. Summ. J. at 7.) Plaintiff presents no evidence that the signature is *not* hers, apart from her testimony that she "can't remember" signing the UIM rejection form:

> Q. Yes. Can you identify whether that is your signature or not?
> A. No. I don't know what that is. I can't see nothing up there.
> Q. Do you see that there are some marks there that look like writing?
> A. Yes.
> Q. But you can't tell whether that's your signature or not?
> A. No.
> Q. Do you remember whether you signed a rejection of underinsured motorist protection form when you were meeting with Mr. Wilson?

---

[1] Prior to 1999, Allstate stored all documentation on microfilm, and disposed of original copies. See Sisson Aff. at ¶ 3. The document in question is an enlargement of a microfilm containing documentation of Jackson's insurance policy.

      A. No, I can't remember that.

Jackson Dep. at 30:14 to 31:5.[2]  Plaintiff's own expert fails to opine that the signature is not Jackson's.  Rather, the expert states, "I am unable to offer an opinion regarding the signature in question. . . ."  Def.'s Ex. S ¶ D.2.

Defendant, in support of its contention that the signature is Jackson's, has submitted evidence that:

- Allstate maintained the questioned rejection form as part of Jackson's policy application, with the form bearing the same date and date stamp as the rest of the

---

[2] Throughout her sworn deposition, Jackson refuses to explicitly acknowledge most of the signatures in the application as her own, even those that are undisputedly genuine:

> [With respect to Def.'s Ex. A at ALL0005:]
> Q. Could you turn to the next page.  Do you see there's a line for the policy holder's signature? . . . Do you recognize that as your signature?
> A. I don't – they don't have it too plain up here, you know. . . .
> Q. But, to the best of your ability looking at that, can you say sitting here today whether that is or is not your handwriting on that line?
> A. *I can't say it's not and I can't say it is.*
> . . .
> Q. Now, if you look down toward the middle of the [next] page, do you see there's a signature . . . is that your signature?
> A. It could be.  It looks like it.
> Q. And to the right of that it says date 8/17/98.  Is that your handwriting as well?
> A. That could be.
> Q. Do you know for sure whether it is or it isn't?
> A. *It looks like it could be.  It's been a long time.*
> . . .
> [With respect to the "Uninsured Motorist" rejection, Def.'s Ex. A at ALL0007:]
> Q. . . . Do you see there's a line for your signature down towards the bottom of the page . . . Is that your handwriting?
> A. It could be.
> Q. Do you know for sure whether it is or not?
> A. *There's years gone by.  Got me.  It could be.*

Jackson Dep. at 22:22 to 33:1 (emphases added).

- pages of the application. (Def.'s Ex. A.)

- Jackson received at least seven policy renewal forms that explicitly stated that she had rejected UIM coverage (Def.'s Exhs. D through J), which she accepted consistently without question or protest.

- Allstate never charged, and Jackson never paid, premiums for UIM coverage at any time prior to her accident.

- Expert testimony states that the "partially visible written signature was, in all probability, the writing of the name 'Elise Jackson'" and that "the questioned 'Elise Jackson' signature is pictorially similar to the known signatures of Elise Jackson."[3]  (Def.'s Ex. T at ¶ III.)

- Jackson's policy application otherwise "reflects a desire to minimize premiums" (Def.'s Mot. Summ. J. at 2), including an undisputed rejection of uninsured motorist ("UM") coverage (Def.'s Ex. A at ALL0007) and a selection of a "limited" tort option (Def.'s Ex. A at ALL0006).

- To select UIM coverage but not UM coverage, according to Allstate, "would make no sense."[4]  (Def.'s Mot. Summ. J. at 9.)

- Allstate has no incentive to issue a policy providing less coverage than an insured

---

[3] Though circumstantial, evidence of similarity between a challenged signature and known exemplars is persuasive evidence that a signature is not a forgery.  See Nieves v. Hess Oil Virgin Islands Corp., 219 A.2d 1237, 1252 (3d Cir. 1987); Tippet v. EMC Mortgage Corp., 2004 WL 2495405 at *4 (Bankr. E.D. Pa. 2004).

[4] Hank Wilson, the agent who helped Jackson complete her original application, testified that "it's rare that you don't have [UIM and UM coverage] together" and further agreed with defendant's counsel that "it would make more sense if you were going to pick just one of them, to pick uninsured rather than underinsured" See Wilson Dep. at 19:11 to 20:7.

4

wants, as each additional coverage is an additional profit for Allstate and an additional commission for the issuing agent. See Wilson Dep. at 26:1 to 27:2.

- Jackson twice acknowledged in writing on her application that she understood the coverages she had selected (Def.'s Ex. A at ALL0004, ALL0009), including the original application summary (Def.'s Ex. A at ALL0001-ALL0004), which listed six selected coverages, none of which were UIM coverage.

### III. LEGAL STANDARD

Summary judgment is appropriate where, viewing the record in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). "This standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48 (emphasis in original). A plaintiff's bald allegations and denials, unsupported by facts of record, do not create an issue of material fact sufficient to withstand summary judgment. Fed. R. Civ. P. 56(e); Liberty Lobby, 477 U.S. at 248-49. "[T]he underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert denied, 429 U.S. 1038 (1977).

### IV. DISCUSSION

The only factual dispute in this case is the origin of the "Elise Jackson" signature on the

UIM rejection form. Unless the signature is a forgery, Allstate has breached no duty, Jackson's policy does not include UIM coverage, and Jackson, of course, has no claim for breach of contract or bad faith. To resolve this issue, two basic questions must be answered: (1) Does the MVFRL change the Pennsylvania common law rule that the party asserting the forgery bears the burden of proving the forgery? and (2) If not, has Jackson, the party asserting the forgery, presented sufficient evidence to create an issue of material fact under Federal Rule of Civil Procedure 56?

**A. The Burden of Proof**

Under Pennsylvania common law, a party relying on forgery "has the burden in the first instance of proving the facts upon which the forgery is based by clear, direct, precise and convincing evidence."[5] Carlson v. Sherwood, 206 A.2d 19, 20 (Pa. 1965). Jackson contends that under the MVFRL, in the context of a waiver of UIM coverage, if the insured asserts possible forgery, the burden of proof on the issue of forgery shifts to the insurer to disprove forgery. This argument is contradicted by the MVFRL itself, as well as by Pennsylvania rules of statutory construction. The burden of proof remains with the party asserting the forgery.

The MVFRL requires insurers to offer underinsured motorist and uninsured motorist ("UM") coverage that compensates individuals for damages sustained in accidents with uninsured or underinsured vehicles.[6] Purchase of UM and UIM coverage is optional, although to

---

[5] Under Federal Rule of Evidence 302, "In civil actions and proceedings, the effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law." In this case, the burden of proof on the issue of forgery is therefore determined by Pennsylvania law.

[6] Section 1731(a) of the MVFRL provides: "No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle

refuse such coverage, an insured must sign rejection forms whose precise language is dictated by statute, see 75 Pa. Cons. Stat. Ann. § 1731(b) (UM waiver) and (c) (UIM waiver).[7]

To deny an insured's UIM claim, an insurer must produce a "valid rejection form." 75 Pa. Cons. Stat. Ann. § 1731(c.1). To be valid, the form must specifically comply with the technical requirements of the statute as laid out in § 1731 (c). See, e.g., Lucas v. Progressive

---

registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 . . . . Purchase of uninsured motorist and underinsured motorist coverages is optional." 75 Pa. Cons. Stat. Ann. § 1731(a).

[7] Section § 1731(c) provides: "Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

..................................
Signature of First Named Insured
..................................
Date

**(c.1) Form of waiver.**--Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information."

Cas. Ins. Co., 680 A.2d 873 (Pa. Super. Ct. 1996) (holding that an insurer who produced signed rejections of UIM and UM coverage on a single page was liable to plaintiff for UIM coverage). To hold that an insurer must be able to prove the validity of a signature in every situation involving § 1731(c), however, would impose an additional technical requirement on the insurer, namely, that of potentially being required to prove that every signature it maintains in its records is not a forgery.[8]  The statute simply does not require this.

Unless the statute specifically provides otherwise, there is no reason that the burden of proof should be different in the statutory context than that at common law.  Pennsylvania courts are reluctant to infer abrogation of a common law rule from legislative silence: "[A]n implication alone cannot be interpreted as abrogating existing law.  The legislature must affirmatively repeal existing law or specifically preempt accepted common law for prior law to be disregarded."  Metropolitan Prop. and Liability Ins. Co. v. Ins. Comm'r of Pennsylvania, 580 A.2d 300, 302 (Pa. 1990).  There is no indication whatsoever that the MVFRL changes the common-law rule that the party asserting the forgery bears the burden of proving the facts upon which the forgery is based.  To withstand summary judgment, Jackson therefore bears the burden of showing that the challenged signature is a forgery.

**B. Jackson's Evidence of Forgery**[9]

---

[8]  With respect to the insurer's responsibility of validating signatures, the statute goes no further than to say that "[t]he signatures on the forms *may* be witnessed by an insurance agent or broker."  75 Pa. C.S.A. § 1731(c.1) (emphasis added).

[9]  As Justice Rehnquist noted in his dissent in Liberty Lobby, it is difficult to incorporate a state substantive evidentiary burden into a federal summary judgment analysis.  Liberty Lobby, 477 U.S. at 269-71 (Rehnquist, J., dissenting).  Under the federal law of summary judgment, state law determines which party bears the burden of proof and which facts are material for purposes of summary judgment.  Id. at 248.  But, the federal district judge, under the applicable

Neither Jackson's bald allegation of forgery nor her testimony that she cannot remember signing the rejection form, nor the combination of both, satisfy her evidentiary burden to preclude a federal grant of summary judgment. Therefore no genuine issue of material fact exists with respect to the alleged forgery, and Allstate is entitled to judgment as a matter of law.

When determining whether a genuine issue of material fact exists, a federal court must take into account the substantive evidentiary burden that the parties will bear at trial. Liberty Lobby, 477 U.S. at 253. Under Pennsylvania common law, to prevail at trial, the party asserting forgery must present "clear, direct, precise and convincing evidence" of forgery. Carlson v. Sherwood, 206 A.2d 19, 20 (Pa. 1965). Accordingly, I must decide whether a reasonable jury could find for Jackson by clear, direct, precise and convincing evidence. See Liberty Lobby, 477 U.S. at 254-55.

Under Pennsylvania law, in order for evidence to be clear and convincing,

---

standards set forth in the Federal Rules of Civil Procedure for judgment as a matter of law, determines whether a genuine issue of material fact exists such that a reasonable jury could return a verdict for the nonmoving party. See id. at 249; Fed. R. Civ. P. 50(a)(1), 56(c), 56(e). In the present case, state law determines that the burden of proof on the issue of forgery rests on Jackson. It further determines that the MVFRL is immaterial to this burden of proof. But, it is for me to determine, under the applicable standards in Rule 56, whether there is a material dispute with respect to the forgery such that a reasonable jury could find for Jackson; and under Rule 56(e), the mere allegations of forgery in her complaint are insufficient to withstand summary judgment.

Jackson also, however, presents testimony that she cannot remember signing the form. I must therefore decide, as a matter of federal summary judgment law, whether this testimony creates a genuine issue of material fact. Under Liberty Lobby, this inquiry will, as discussed in the text, involve an incorporation of the state substantive evidentiary burden. See 477 U.S. at 253. Because the state standard for proof of forgery is "clear and convincing" evidence, see Carlson v. Sherwood, 206 A.2d 19, 20 (Pa. 1965), I must therefore decide whether, based on Jackson's testimony that she cannot remember signing the form, a reasonable jury could find for Jackson by clear and convincing evidence. See Liberty Lobby, 477 U.S. at 254-55. For the reasons stated in the text of this opinion, I hold as a matter of law that a jury could not make such a finding.

9

> the witnesses must be found to be credible, [ ] the facts to which they have testified remembered distinctly and the details thereof narrated exactly and in due order, and [ ] their testimony so clear, direct, weighty, and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

Jones v. Prudential Prop. and Cas. Ins. Co., 856 A.2d 838, 844 (Pa. Super. Ct. 2004). In Carlson v. Sherwood, a judgment debtor brought an action to open a judgment on a note on the grounds that the note had been forged. When asked by his counsel if he recognized the signature on the note as his own, the judgment debtor responded "I would say no," and "I *don't think* I ever did sign it." Id. (emphasis in original). The court found that this "uncorroborated testimony" was "certainly less than clear, direct, precise and convincing."[10] Id. Like the debtor in Carlson, Jackson has offered no evidence that the signature is not her own except for "uncorroborated testimony" containing the same degree of doubt and uncertainty that was found insufficient in Carlson. Moreover, Jackson's own expert was unable to testify that the signature was a forgery, while Allstate's expert did opine that the questioned signature was "pictorially similar" to conceded exemplars. Jackson has not presented clear and convincing evidence that her signature was forged. She has only claimed that she may have signed the UIM rejection form but cannot remember doing so. While the court here need not determine the credibility of her testimony, it is clear that "the facts to which [she has] testified" are not "remembered distinctly." Jones, 856 A.2d at 844. Jackson has only testified that she does not remember whether she signed the waiver. She has not, however, testified that she distinctly remembers *not* signing the waiver.

Because a reasonable jury could not find for Jackson by clear and convincing evidence,

---

[10] The Third Circuit itself has reached the same conclusion that bald allegations of forgery unsupported by facts of record are insufficient to create issues of material fact. Nieves v. Hess Oil Virgin Islands Corp., 819 F.2d 1237, 1252 (3d Cir. 1987) (involving an action under the Virgin Islands Code).

Jackson has not raised a genuine issue of material fact as to whether her signature on the UIM rejection form was forged. Defendant's motion for summary judgment is therefore granted.

## V. CONCLUSION

Pennsylvania law assigns Jackson the burden of proving forgery by clear and convincing evidence. The standard is commensurately high for a motion for summary judgment, and Section 1731 of the MVFRL does not shift the burden to Allstate. Because Jackson's claim relies solely on the bald allegations of forgery in her complaint and mere assertions that she cannot remember signing the form, Jackson has not met her burden. Accordingly, she has not created a genuine issue of material fact with respect to her claims for relief, and Allstate's motion is granted.

**ORDER**

**AND NOW**, this __12th___ day of July, 2006, it is **ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**.

*/s/ Anita B. Brody*

_____

ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:        Copies **MAILED** on _____ to:

O:\ABB 2006\JacksonSJM.wpd